UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ALEXANDRIA L. ERWIN, ET AL., <br><br>　　　　　　Plaintiffs, <br><br>　v. <br><br>OBI SEAFOODS LLC, <br><br>　　　　　　Defendant. | CASE NO. 2:22-cv-00893-JHC <br><br> ORDER GRANTING MOTION TO QUASH |

**I**

**INTRODUCTION**

Before the Court is Plaintiffs' motion to quash roughly a dozen third-party subpoenas to be issued to Plaintiffs' employers, both before and after Plaintiffs worked for Defendant OBI Seafoods. Dkt. # 23 (motion); *see also* Dkt. # 27 (reply brief). OBI opposes the motion. Dkt. # 25.

For the reasons below, the Court GRANTS the motion to quash. But OBI may obtain compensation-related information if Plaintiffs do not timely drop their claim for economic damages. And the Court does not foreclose the possibility that the information sought could become relevant in the future.

ORDER GRANTING MOTION TO QUASH - 1

## II

### LEGAL STANDARDS

Courts maintain broad discretion to control the discovery process. A party is entitled to discovery into matters "relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). But a court may limit discovery to protect a party from annoyance, embarrassment, oppression, or undue burden. Fed. R. Civ. P. 26(c)(1). Similarly, a court may modify or quash a subpoena to a third-party that presents an undue burden. See Fed. R. Civ. P. 45(d)(3)(A). "Whether a subpoena imposes an undue burden depends on the relevance of the information requested, and the burden imposed." *Rollins v. Traylor Bros.*, No. C-14- 1414, 2017 WL 1756576, at *1 (W.D. Wash. May 5, 2017). "The test for 'relevance,' in the context of a Rule 45 subpoena to a non-party, is no different than the test under Rules 26 and 34." *Wells Fargo Bank NA v. Wyo Tech Inv. Grp. LLC*, 385 F. Supp. 3d 863, 873 (D. Ariz. 2019) (citations omitted); *see also Scott v. Multicare Health Sys.*, No. C18-0063-JCC, 2019 WL 1559211, at *1 (W.D. Wash. Apr. 10, 2019) ("The scope of a subpoena request is coequal with the scope of discovery.").

Courts generally require a "specific showing" when a party seeks to discover personnel files maintained by past and future employers. *See Paananen v. Cellco Partnerships*, C08-1042 RSM, 2009 WL 2057048, at *3 (W.D. Wash. July 15, 2009) ("Generally, employment records from separate employers are not discoverable due to their highly private nature absent a specific showing by a defendant as to their relevance."); *Scott v. Multicare Health Sys.*, No. C18-0063-JCC, 2019 WL 1559211, at *2 (W.D. Wash. Apr. 10, 2019).

# III

## DISCUSSION

OBI seeks to issue a dozen third-party subpoenas to Plaintiffs' employers, both before and after Plaintiffs worked for Defendant OBI Seafoods. The subpoenas request:

> The personnel file relating to [Plaintiff] limited to, a) all employment applications, corrective action or discipline notices, any claims for unemployment compensation or any other claims for compensation made; and b) documents evidencing or relating to any lawsuits, charges or complaints (formal or informal) filed against [the employer] by [Plaintiff], at any time.

*See, e.g.*, Dkt. ## 23 at 3, 24-1 at 9.

In their brief in opposition, OBI raises three primary bases for the relevance of the proposed subpoenas.

A.   Credibility

OBI seeks Plaintiffs' employment records because it says these records are relevant to Plaintiffs' credibility. Dkt. # 25 at 6–7.

*First*, OBI says that contrary to the assertions by Plaintiffs, record evidence suggests that Plaintiffs did not perform satisfactorily while employed by OBI. Dkt. # 25 at 6. OBI says that the employment records sought could therefore bear on Plaintiffs' "credibility." But even accepting OBI's argument at face value, OBI does not explain why employment records from *different* employers are relevant to refuting Plaintiffs' assertions of satisfactory employment *at OBI*. If OBI wishes to impeach Plaintiffs' assertions that they performed satisfactorily while employed by OBI, OBI already has all the evidence it needs in its own records.

Critically, OBI did not fire Plaintiffs for poor performance (Dkt. # 23 at 3). So even if OBI could show that Plaintiffs performed poorly in other roles, it has not shown how that information bears on the issues of this case; OBI has not asserted, for example, that its actions were justified by Plaintiffs' poor job performance or otherwise explained why such information

ORDER GRANTING MOTION TO QUASH - 3

would be relevant. OBI has not explained why "performance" is relevant in this race- and sex-discrimination case (aside from assessing "credibility"). And none of Plaintiffs' prior employers were in the seafood industry, further diminishing the relevance of any performance-related information. Dkt. # 23 at 7. To the extent that the information sought is marginally probative as to credibility, the requested information is not proportional to the needs of the case. *See* Fed. R. Civ. P. 26(b).

*Second*, OBI seeks employment records because Plaintiff Luciano's employment application to OBI is purportedly inconsistent with his responses to OBI's first set of interrogatories and requests for production. Dkt. # 25 at 7. OBI seeks employment records to corroborate (or refute) the full scope of Plaintiff's work history and says that it "should not be forced to rely on Plaintiff Luciano's representations" about his employment. *Id.* OBI does not identify any particular inconsistency that gives it pause. To the extent that this inconsistency bears on *credibility*, then the inconsistency between Plaintiff Luciano's employment application and discovery responses can be explored through cross-examination without resort to evidence from different, non-OBI employers. *Cf. Blotzer v. L-3 Commc'ns Corp.*, 287 F.R.D. 507, 509 (D. Ariz. 2012). OBI does not argue that an accurate work history is relevant for any other purpose other than assessing Plaintiffs' credibility.

B.    Damages

OBI says that Plaintiffs' employment records are relevant to the appropriate measure of monetary damages. Dkt. # 25 at 8–9. OBI says that employment records can provide an "accurate picture of Plaintiffs' total compensation." *Id.* at 8. This is necessary, OBI says, to support OBI's argument that Plaintiffs' damages should be reduced in accordance with their ability to obtain employment after their relationship with OBI ended—a mitigation-based

argument. *Id.* (citing Dkt. # 8 at 9 (describing OBI's "offset" and "mitigat[ion] damages" defenses)).

But in their motion, Plaintiffs stated that they offered to "drop their claims for economic damages" if OBI was willing to forgo issuing the third-party subpoenas. Dkt. # 23 at 3; *see also* Dkt. # 27 at 3 ("Economic damages are not on the table."). Employment records relating to mitigation thus do not appear relevant. However, OBI notes that despite expressing a willingness to drop their claim for economic damages, Plaintiffs have not done so yet. Dkt. # 25 at 1 n.1, 4. If Plaintiffs do not timely drop their claim for economic damages, OBI may seek to subpoena information about Plaintiffs' wages, benefits, and unemployment requests in order to develop its mitigation defense.

C.   Emotional Distress Claim

OBI says that Plaintiffs' employment records are "relevant to emotional distress claims because they reflect upon the emotional state of Plaintiffs prior to their employment for the Company and their performance afterwards." Dkt. # 25 at 8. However, OBI has submitted no evidence to suggest that the employment records sought are likely to produce any information probative of emotional distress. Citing the "Dotson" declaration, OBI asserts in its motion that "there is evidence Plaintiff Erwin has dealt with emotionally distressing issues . . . while in the workplace." Dkt. # 25 at 9 (citing Dkt. # 26 at 2). But the Dotson declaration provides no support for that proposition.[1] Dkt. # 26 at 2. The mere possibility that employment records *might* contain such information is insufficient given the sensitive nature of such records.[2]  *Cf.*

---

[1] The cited portion of the declaration states only that "[d]efense counsel has found evidence of a blog maintained by Plaintiff Erwin discussing sexual harassment and depression prior to her employment with Defendant." Dkt. # 26 at 2.

[2] The Court does not imply that employment records are categorically undiscoverable to assess a claim for emotional distress. But a defendant must, at minimum, demonstrate some reason why that information may be found in the employment records and why the information is relevant. A contrary

ORDER GRANTING MOTION TO QUASH - 5

*Specht v. Nw. Helicopters LLC*, No. 3:21-CV-05730-JHC, 2022 WL 16961376, at *2 (W.D. Wash. Nov. 16, 2022) ("[G]iven the sole rationale for discovery provided by Defendants (to seek information about alleged emotional distress) and Plaintiff's express statement that she is not seeking emotional damages stemming from impaired ability to work, Defendants have not made a 'specific showing' that the discovery sought is relevant to the case.").

## IV

### CONCLUSION

For the reasons above, the Court GRANTS the motion to quash. Dkt. # 23. But OBI may seek compensation-related information if Plaintiffs do not timely drop their claim for economic damages. And the Court does not foreclose the possibility that the information sought could become relevant in the future.

Dated this 11th day of July, 2023

John H. Chun
United States District Judge

---

rule would subject plaintiffs to nearly limitless discovery, as nearly any record could be probative of a plaintiff's emotional state.

ORDER GRANTING MOTION TO QUASH - 6